**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

Catherine Eckley Bentley,                                    Case No.: 6:17-bk-00294-KSJ

      Debtor.

_____/

Susan Kolb, M.D.,                                            Adv. No.: _____

      Plaintiff,

v.

Catherine Eckley Bentley,

      Defendant.

_____/

## <u>COMPLAINT</u>

Plaintiff Susan Kolb, M.D. sues Debtor / Defendant Catherine Eckley Bentley and requests the Court enter judgment, construct a constructive trust, and impose and foreclose an equitable lien on certain real property.

### I.      PARTIES AND JURISDICTION

1.      Plaintiff is a resident of Georgia.

2.      Defendant is a resident of Florida and the Debtor in this proceeding.

3.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      This is a core matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (b)(2)(O).

## II.   FACTUAL BACKGROUND

**A.   Bankruptcy Case Background**

6.   On January 13, 2017, the Defendant filed a voluntary petition for relief (the "Petition") under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the "Court"), initiating the above-styled bankruptcy case (the "Bankruptcy Case").

7.   On July 5, 2017, the Defendant filed a Motion to Allow Conveyance of Homestead Property (the "Motion to Convey Homestead") (Doc. No. 27), seeking Court authority to execute an "enhanced life estate deed" or "Lady Bird Deed" for her homestead property, to avoid the property passing through probate upon the Debtor's death.

8.   On April 17, 2017, Plaintiff filed a complaint objecting to discharge and dischargability of certain debts.  (AP 6:17-ap-00047 Doc. No. 1).  That Adversary Proceeding is still pending in this Court.

9.   Plaintiff filed an Objection (Doc. No. 35) to the Motion to Convey Homestead.

**B.   Pre-Bankruptcy Case Background**

<u>Promissory Notes and Security</u>

10.   On May 24, 2006, Plaintiff loaned Lynford Bentley ("L. Bentley") $50,000. A true and correct copy of said check is attached hereto as **Exhibit A**.

11.   In exchange for loaning him $50,000, L. Bentley executed two secured promissory notes benefitting Plaintiff.

12.   The first promissory note is dated May 16, 2006 and it is secured by "one 1961 Rolls Royce Silver Cloud II, serial number LSTB222."  A true and correct copy of said Promissory Note is attached hereto as **Exhibit B** (the "May 16 Promissory Note").

13.     The second promissory note is dated May 24, 2006 and it is secured by "one 1930 L29 Cord Convertible Sedan, Vehicle Identification Number FD3007" (the "Cord").  A true and correct copy of said Promissory Note is attached hereto as **Exhibit C** (the "May 24 Promissory Note").

The Cord

14.     Ms. Bentley and the Cord were the subject of a 1992 lawsuit in Georgia resulting in the following reported decision from the Georgia Court of Appeals: <u>Freeman v. Bentley,</u> 205 Ga. App. 409, 422 S.E.2d 435 (1992).  A copy of this decision is attached hereto as **Exhibit D**.

15.     In that Georgia Court of Appeals decision, the Court clearly divested Ms. Bentley of any right of ownership whatsoever in the Cord.  The case confirmed that in 1987 the car was legally transferred by Verney Bentley (Catherine Bentley's ex-husband) to Jefco Leasing Company and Jimmy Freeman in Cherokee County, Georgia.

16.     A search of the Department of Motor Vehicles ("DMV") records in Georgia reveals that the Cord was last registered in Georgia to Lyford Henry Bentley of 116 Hartwood Drive, Woodstock, Cherokee County, Georgia 30189-3414 (*i.e.*, L. Bentley) from 2005 until 2008.  A copy of the DMV records is attached as **Exhibit E**.

17.     In order to evidence and record the secured status of the Cord, on July 10, 2015, there was caused to be filed a Florida UCC Financing Statement at Book #7137, page 3360 listing the debtor's name as Lynford Bentley (*i.e.*, L. Bentley), and the secured party's name as Susan Kolb (*i.e.*, Plaintiff), and the collateral expressly listed as "one 1930 L29 Cord Convertible Sedan, Vehicle Identification Number FD3007" (*i.e.*, the Cord).  A copy is attached hereto as **Exhibit F**.  This UCC Statement was filed in Volusia County, Defendant's county of residence.

Theft of the Cord

18.     On December 8, 2009 L. Bentley died.

19.     At the time of L. Bentley's death, he owed Plaintiff $47,666.00 in principal under the terms of the Promissory Notes.

20.     As of September 24, 2017, L. Bentley and his probate estate owed Plaintiff $140,147.16 in principal and interest.

21.     After L. Bentley's death, L. Bentley's girlfriend, Belinda Horne, and L. Bentley's mother, the Defendant, took possession of the cars that secure the Promissory Notes, and all of L. Bentley's possessions including his money.

22.     Despite repeated requests, demands, and court orders, Defendant has failed and refused to transfer the cars or assets of L. Bentley's Estate to Plaintiff or to pay Plaintiff in accordance with the Promissory Notes.

23.     Instead, the week after L. Bentley died, Belinda Horne, working in concert with Defendant as Defendant's agent, co-conspirator, and/or partner, secretly transported the Cord to her cousin, Patricia Bell's locked, secluded garage on Northside Drive in Atlanta.

24.     After Plaintiff served Belinda Horne with a Request to Inspect the Cord during the pendency of another civil action, on May 20, 2014, Belinda Horne immediately contacted Defendant and advised Defendant come and take the car because the car was at risk of being taken by Plaintiff pursuant to the Request to Inspect.

25.     Within days after May 20, 2014, and with the assistance of Belinda Horne, Defendant retained a transport company, traveled to Atlanta, took possession of the Cord from Belinda Horne, and transported the Cord to Florida where Defendant stored it in a locked garage at All Aboard Storage in Daytona Beach, Florida beginning on May 30, 2014.

26.     Defendant participated in the move of the Cord to All Aboard Storage in Florida without informing Plaintiff about the move, without posting a bond in violation of O.C.G.A. §

44-14-234(3), and with full knowledge that the Cord was the subject of litigation and the Plaintiff's claim and right to it.

The Writ of Possession in Georgia

27.     At a June 11, 2015 hearing before a court of competent jurisdiction in Cobb County, Georgia on Plaintiff's Emergency Motion for Interlocutory Writ of Possession and Supporting Brief ("Emergency Motion"), the Georgia court ruled from the bench and stated that it was granting Plaintiff's Emergency Motion for a writ to take back possession of the Cord in Florida.

28.     On July 20, 2015, that Georgia court entered a writ of possession relating to the Cord awarding Plaintiff interlocutory possession of the Cord to the detriment of Defendant, which was also recorded at Book #7143, page 4015 on that same day.  A copy of that writ of possession is attached hereto as **Exhibit G**.

Sotheby's Sale of the Cord

29.     Between the Georgia court's hearing on June 11 and July 20 when the writ of possession was entered, the Cord was moved from All Aboard Storage to an undisclosed location.

30.     Specifically, on Saturday morning, June 27, 2015, Defendant and/or Belinda Horne, and/or an agent, co-conspirator, or partner thereof, removed the Cord from All Aboard Storage.  The Cord was transferred to RM Sotheby's d/b/a Auctions America ("Sotheby's").

31.     A reasonable inquiry by Sotheby's would have revealed that Defendant was not the legal owner of the Cord and that Plaintiff was not only the owner, but had entered into litigation to recover the Cord.  Had Sotheby's done its due diligence it would have discovered these facts, and a heightened level of due diligence was appropriate under the circumstances of this sale since the Cord had no title.

32.    Sotheby's improperly listed the Cord in its online and printed publication as having "One Owner since 1973" and "title in transit."

33.    Had Sotheby's requested any information from All Aboard Storage (the storage facility where the Cord was being stored until June 27, 2015 and where, upon information and belief, Sotheby's arranged to pick up of the Cord), Sotheby's would have become privy to the Georgia DMV records showing "Lynford Henry Bentley" (*i.e.*, L. Bentley) as the owner and would have become privy to the legal documents that had been forwarded to All Aboard Storage during the pendency of other lawsuits.  Attached hereto as **Exhibit H** is a copy of the 2007 DMV record provided to All Aboard Storage by Defendant as a prerequisite to her leasing the storage unit.

34.    Sotheby's was at least aware of the risks of not having title to the Cord (though marketing it as "title in transit") and bonded title in its name with respect to the Cord. Specifically, Sotheby's obtained a title bond insuring Sotheby's in the event

> any prior owner, lien holder, or security interest holder, and if any subsequent purchaser of the above vehicle [*i.e.*, the Cord] or person acquiring any security interest or lien in it, and their respective successors in interest should suffer any expense, loss or damage, by reason of the issuance of the Certificate of Title of the above vehicle or on account of any defect in or undisclosed security interest upon the right, title and interest of the Principal in and to the vehicle, the Obligee shall have a right of action to recover on this bond for the benefit of such person.

> That said bond shall remain in force and effect for a period of <u>Four</u> (4) years from the date of issuance of this bond unless the Obligee has been notified of a breach of a condition of the bond

A copy of that title bond is attached as **Exhibit I**.

35.    Based on documents obtained from Sotheby's, on September 5, 2015, Sotheby's, at the direction of Defendant, sold the Cord at auction for approximately $137,500, and after deduction of the buyer's premium, the final bid price was $125,000 (the "Auction Proceeds").  A copy of the Bill of Sale from that auction is attached as **Exhibit J**.

Lis Pendens Filed / Volusia County Action

36.     On July 30, 2015, Dr. Kolb initiated an action in the Circuit Court of the Seventh Judicial Circuit in and for Volusia County, Florida, Case No. 2015-31141-CICI ("Volusia Action"), to domesticate the Georgia Court Order.   As part of the Volusia Action Dr. Kolb recorded a Notice of Lis Pendens in the public records of Volusia County, Florida, BK 7222, PG 1653 as to the Home (hereinafter defined). A copy of the Lis Pendens in the Volusia County public records is attached as **Exhibit K**.

37.     On October 9, 2015, the Court in the Volusia Action entered an Order Granting Motion to Amend Pleadings and Granting Motion for Contempt and

> Ordered defendant Catherine Bentley shall show cause why she should not be held in contempt of court for removing the vehicle from its location, obstructing the deputy in executing the writ of replevin and refusing to hand over and/or disclose the vehicle which is the subject of this replevin action….

(the "Volusia Court Order").

38.     At some point thereafter despite the court orders, the Debtor used the Auction Proceeds to pay down the mortgage (the "Mortgage") on her home at 1575 Ocean Shore Boulevard, Apartment 806, Ormond Beach, Florida 32176 (the "Home").

39.     The Debtor transferred the Auction Proceeds to pay the Mortgage on the Home to hinder, delay, and defraud Plaintiff.

40.     Defendant did not have any right to possess the Cord and did not have any right to sell the Cord.

41.     Defendant took these actions above maliciously, willfully, and with full knowledge of her conduct.

42.     Defendant's conduct was wrongful, improper, and in violation of court orders.

43.    All conditions precedent to the filing of this action have occurred or have been waived.

44.    Plaintiff has retained the undersigned attorneys to represent her interests in this adversary proceeding and is obligated to pay them a reasonable fee for their services.

## COUNT I
## UNJUST ENRICHMENT

45.    The allegations contained in Paragraphs 1 through 44 are realleged and incorporated by reference as if fully set forth herein.

46.    Defendant improperly took and retained a benefit in the form of the Cord (which the Plaintiff owned) and the Auction Proceeds.

47.    Defendant had knowledge of the benefit that she took and retained and voluntarily accepted that benefit.

48.    The circumstances are such that it would be inequitable for Defendant to retain the benefit without paying the value thereof.

49.    As a direct and proximate result of Defendant's actions, Dr. Kolb has been harmed and Defendant has been unjustly enriched in an amount to be determined at trial.

WHEREFORE, Plaintiff, Dr. Susan Kolb, respectfully requests the Court enter a Final Judgment in her favor and against the Defendant, Catherine Eckley Bentley:

1)    In the amount of the Auction Proceeds as well as any interest arising therefrom;

2)    Constructing and imposing a constructive trust on the Home dating to the time of Defendant's fraudulent conduct and imposing an equitable lien on the Home, and allowing foreclosure of same; and

3)    Granting such other and further relief as the Court deems just and proper.

## COUNT II
## THEFT

50.     The allegations contained in Paragraphs 1 through 44 are realleged and incorporated by reference as if fully set forth herein.

51.     The above–described conduct of Defendant constitutes a theft of Plaintiff Kolb's property under both Georgia and Florida law.

52.     As a result of violating the subject statutes, the Defendant is liable to Plaintiff for all damages suffered as a result of said violations.

53.     As a result of Defendant's theft of Plaintiff's property, Plaintiff has suffered damages with interest accruing thereon at the maximum rate allowed by law.

WHEREFORE, Plaintiff, Dr. Susan Kolb, respectfully requests the Court enter a Final Judgment in her favor and against the Defendant, Catherine Eckley Bentley:

1)     In the amount of the Auction Proceeds as well as any interest arising therefrom; and

2)     Granting such other and further relief as the Court deems just and proper.

## COUNT III
## ACTION TO IMPOSE CONSTRUCTIVE TRUST

54.     The allegations contained in Paragraphs 1 through 44 are realleged and incorporated by reference as if fully set forth herein.

55.     Using the Auction Proceeds and with full knowledge that the Auction Proceeds did not belong to her and had been misappropriated from Plaintiff, Defendant used the Auction Proceeds to pay down the Mortgage on the Home.

56.     The Auction Proceeds do not belong to Defendant; rather, that money was stolen and fraudulently transferred.   As such, Defendant was unjustly enriched and it would be

inequitable to allow Defendant to retain the Auction Proceeds or any tainted property purchased or invested in with the Auction Proceeds.

57.     Plaintiff is without adequate remedy at law and it would be inequitable and unjust not to impose constructive trust on the Home described in Exhibit D hereto.

58.     Due to the unjust enrichment of Defendant, Plaintiff has a special and peculiar interest in the Home described in **Exhibit L** hereto.

59.     If a constructive trust is not imposed on the Home, Plaintiff will suffer irreparable injury because she has no meaningful mechanism for recovery of the $125,000 Defendant used to pay down the Mortgage on the Home Defendant now claims exempt.

60.     If a constructed trust is imposed, the imposition of the constructive trust dates to Defendant's fraudulent and wrongful conduct and pre-dates the bankruptcy filing.

WHEREFORE, Plaintiff, Dr. Susan Kolb, respectfully requests the Court enter a Final Judgment in her favor and against the Defendant, Catherine Eckley Bentley:

1)      Constructing and imposing a constructive trust on the Home dating to the time of Defendant's fraudulent conduct; and

2)      Granting such other and further relief as the Court deems just and proper.

### COUNT IV
### ACTION TO IMPOSE EQUITABLE LIEN

57.     Plaintiff realleges and reincorporates paragraphs 1 through 44 as though fully set forth herein.

58.     This is an action for the imposition of an equitable lien on the Home.

59.     Defendant received approximately $125,000 in the form of the Auction Proceeds.

60.     The Auction Proceeds did not and do not belong to Defendant; rather, the money was stolen from Plaintiff as part of the theft of the Cord.  As such, Defendant was unjustly enriched and it

would be inequitable to allow Defendant to retain the Auction Proceeds or any tainted property purchased with, improved, invested in, etc. with the Auction Proceeds.

61.     Defendant used the tainted money from the Auction Proceeds to pay down and/or pay off the loan secured by the mortgage on the Home.  Because the Home was invested in and/or improved by the tainted funds, it is also tainted.

WHEREFORE, Plaintiff, Dr. Susan Kolb, respectfully requests the Court enter a Final Judgment in her favor and against the Defendant, Catherine Eckley Bentley:

1)     Imposing an equitable lien on the Home and allowing foreclosure of same; and

2)     Granting such other and further relief as the Court deems just and proper.

DATED:  September 29, 2017

Respectfully submitted,

*/s/ Esther McKean*
Esther McKean, Esquire
Florida Bar Number: 28124
Samual A. Miller, Esq.
Fla. Bar No. 34991
**AKERMAN LLP**
Post Office Box 231
Orlando, FL 32802-0231
Phone: (407) 423-4000
Fax: (407) 843-6610
Email: esther.mckean@akerman.com
Email: samual.miller@akerman.com
Attorneys for Susan Kolb, M.D.